IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JEFF B. HARKER,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN SIMPSON et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:08-cv-00035 CW<br><br>Judge Clark Waddoups |

**INTRODUCTION**

This matter is before the court on the defendants' motion for summary judgment. Plaintiff Jeff B. Harker ("Harker") brought this action under 42 U.S.C § 1983, alleging he was falsely arrested and unlawfully searched without probable cause. He alleges no state law causes of action. For the reasons set forth below, the court grants the motion in favor of defendants Davis County and the Davis County Sheriff's Department and denies the motion of defendants Steven Simpson and Brent Peters.

**FACTUAL BACKGROUND**

The motion for summary judgment is presented to the court primarily upon the facts set forth in the plaintiff's affidavit, which are largely uncontested by the defendants.[1] On March 30, 2004 Harker had worked approximately fourteen hours removing machinery, tools, business merchandise

---

[1] Unless otherwise noted, all facts are from Plaintiff's Affidavit in Rebuttal of Defendants' Motion for Summary Judgment (Docket No. 20) (hereinafter "Harker Affidavit").

1

and other belongings which were in a building that had been owned by his father. The building had been damaged in a fire and Harker was on site to remove the property which belonged to him. He had worked until about midnight, was exhausted and decided he needed a break. Harker had two trailers and his pickup truck parked on the property, into which he had been loading the machinery, tools and other items that he was salvaging from the fire.

Harker's father had sold the building and the purchaser had given Harker permission to be on the premises and to remove Harker's personal property. In addition to the trailers and pickup, there was also a large dumpster on the property into which Harker had been discarding equipment that was not capable of being salvaged.

Harker's truck was parked about twenty feet off the roadway on the private property. Materials and equipment were stacked in front and to the side of the truck to be loaded, forming an alcove around the truck. The real property is located approximately one and a half blocks from the North Salt Lake police station. Harker's efforts to salvage his property had been continuing the entire day and were apparent to persons passing the property. There is no evidence presented that anyone had complained or reported any suspicious activity on the property or connected to Harker's actions. The building was mostly boarded up.

After midnight on March 31, 2008, Harker was cold and exhausted. He got into his truck and started it to warm himself. The truck was out of gear and Harker turned on the truck lights to see and plan what else he needed to move before leaving. Harker nodded off with his head leaning on the steering wheel, where he remained until awakened by the police officers a little before 4:00 a.m. There was no indication that the truck had been involved in an accident, nor any evidence of damage whatsoever to the front or sides of the truck. The truck was not in contact with any of the salvaged

equipment and other personal property stacked nearby.

A little before 4:00 a.m., Officers Harker and Peters observed the truck, which was still running with the lights on. The officers entered the property to investigate. It is undisputed that the truck was parked entirely on the private property and that the officers did not have a warrant and had received no complaints about the activities on the property. The defendants have offered no evidence that the officers had reasonable suspicion that a crime was being committed. The officers tapped on the window to wake Harker. When Harker rolled the window down, he was confused, having been suddenly roused from sleep. The officers ordered Harker to turn off the motor, which he did. The officers did not ask Harker if he had been in an accident or if he had been drinking. Harker told the officers he was on the site to remove his property because the place had been sold. Harker's explanation was consistent with the machines and equipment stacked near the truck and the fact that trailers and a dumpster were on the site.

The officers ordered Harker to get out of the truck. Harker complied, but testified that he was groggy from just being awakened and was blinded by the beam of the high intensity search light from the police car which made it difficult for his eyes to adjust from sleeping. As Harker was stepping down from the truck, he stumbled, but did not fall to the ground. Harker testified that his breath did not smell of alcohol, that his speech was not slurred and that he tripped only once in the bright light. The defendants have offered no contrary evidence. After Harker was out of the truck, the officers ordered him to walk to the back of his truck, between it and the police car. Harker was able to walk to the back of the truck without falling and without assistance. The officers did not request that Harker submit to a field sobriety tests, to a portable breathalyzer test, to an intoxilyzer test or to give a blood sample for testing. The officers did not complete the standard DUI form describing Harker's

appearance, a request for a field sobriety tests, any Miranda warnings or an intoxilyzer. The officers did not issue a citation for operating a vehicle while under the influence.

The officers assert that as Harker "stumbled to the rear of the van, Mr. Harker immediately put his hands in his pockets, so [O]fficer Peters performed a over-the-clothing, 'Terry Frisk' for his own safety."[2] The officers further assert that during the Terry Frisk, "[O]fficer Peters felt an object which he believed to be a knife and removed it. The object was actually a orange, butane mini-torch, which the officers believed to be a smoking pipe and arrested Mr. Harker for possession of drug paraphernalia."[3] The only evidence offered to support the assertion is the police report. In the report the officers wrote, "Mr. Harker immediately placed his hands in his jacket pockets. Officer Peters performed a Terry Frisk on Mr. Harker and a large round object was felt in his left front pant pocket, believed to be a possible knife. The object was removed and found to be an orange butane mini-torch. Due to the quick removal of the torch and its shape Officer Peters believed the torch to be a smoking pipe (possible paraphernalia)."[4]

Harker denies both the assertion and the account as set out in the police report. He testified,

> I did not have my hands in my jacket or other pockets as I walked to the back of my truck with the two officers, who I remember were both larger than I. I made no threatening gestures toward defendants and I never verbally threatened them with harm. I was unarmed, was not dangerous and I had no record of violent crime. I did as I was told by the defendants and put both my hands on the top edge of the tailgate of the truck and then I asked the defendants if I was being arrested and what I was being arrested for. Both officers refused to answer me

---

[2] Def. Memo in Supp. of Mot. for Summary Judgment, ¶ 7 (Docket No. 9).

[3] *Id.* ¶ 8.

[4] Davis County SO Report, 19 (Docket No. 9, Ex. A) (hereinafter "Police Report").

and one began frisking me from my neck down. I am a mechanic and a Blazer torch is used to connect or disconnect soldered wires and at times to apply or remove shrink wrap as wire insulation. It is useless as a weapon and in the leg pocket of my work overalls I had one of these, which was about six inches high, three inches in diameter and had a burner head tube that stuck out about an inch and one-half at a 90 degree angle from the top of the body. The Blazer torch in no way could reasonably fell [sic] like or resemble a dangerous knife in my pocket and it had no flat blade.[5]

The officers placed Harker under arrest and conducted a search "incident to arrest" which they assert "produced a baggie holding three smaller baggies of . . . what turned out to be illegal narcotics."[6] Again the only support for the assertion is the police report, which states only that the baggie contained "three Baggies of a white grainy substance and multiple small colored Baggies."[7] The defendants have proffered no evidence that the substance in the baggies was ever tested to determine its content.

Harker testified that he verbally protested the search and that in response, the officers "pulled my arms behind my back and twisted one wrist needlessly to hurt me. This was unnecessary to put handcuffs on my wrists."[8] The officers placed Harker in the patrol car and ordered that the truck be towed from the private property to the police storage area. The charges against Harker were eventually dropped, but Harker was required to pay bail, towing and other fees to reclaim his truck.

---

[5] Harker Affidavit, ¶¶ 21–25 (Docket No. 20).

[6] Def. Memo in Supp. of Mot. for Summary Judgment, ¶ 9 (Docket No. 9).

[7] Police Report, 19 (Docket No. 9, Ex. A).

[8] Harker Affidavit, ¶ 31 (Docket No. 20).

## ANALYSIS

**I.  STANDARD OF REVIEW**

"Summary judgment is appropriate if the moving party demonstrates that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'"[9] The court views the evidence in the light most favorable to the non-moving party, "and all justifiable inferences are to be drawn in [the nonmovant's] favor."[10] Summary judgment must be entered "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[11]

**II.  OFFICERS SIMPSON AND PETERS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY.**

Officers Simpson and Peters argue that all claims against them must be dismissed on summary judgment "because the Utah Governmental Immunity Act ('UGIA') precludes claims against state employees acting within the scope of their employment."[12] In support of this proposition, defendants cite to the Utah Code[13] and several cases decided by the Utah courts.[14] In

---

[9] *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 944 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[11] *Orenduff*, 548 F.3d at 944 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[12] Def. Memo in Supp. of Mot. for Summary Judgment, at 3–4 (Docket No. 9).

[13] Defendants cite to Utah Code Ann. § 63-30d-202, which has since been renumbered as Utah Code Ann. § 63G-7-202.

[14] *Madsen v. Borthick*, 658 P.2d 627 (Utah 1983); *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337 (Utah 1987); *Brown v. Wanlass*, 2001 UT App 30, 18 P.3d 1137.

addition, defendants cite to *Harris v. Champion*,[15] arguing that it holds that neither the state nor a state official who is acting in an official capacity is a "person" within the meaning of § 1983. The argument must be rejected. Harker is suing Officers Simpson and Peters in their individual capacity. Under § 1983, police officers may be personally liable if they are acting under color of law and they violate a clearly established constitutional right. It is undisputed in this case that the officers were acting under color of state law and that Harker is alleging that the officers violated constitutional rights under the Fourth Amendment. Consequently, suit is proper against Officers Simpson and Peters, in their individual capacity, under § 1983.

### III. OFFICERS SIMPSON AND PETERS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR DEFENSE OF QUALIFIED IMMUNITY.

Although not asserted in the defendants motion for summary judgment, Harker opposes the motion by arguing that Officers Simpson and Peters do not meet the requirements for qualified immunity. The defendants respond in their reply memorandum that Officers Simpson and Peters are entitled to qualified immunity, arguing that it protects "all but the plainly incompetent or those who knowingly violate the law."[16] Defendants argue that "the most that could be said about defendants Simpson and Peters is that they incorrect [sic] that Plaintiff was dangerous or was guilty of a crime."[17] They further observe, correctly, that "[t]he constitutional validity of the search . . . must depend upon the constitutional validity of plaintiff's arrest."[18]

---

[15] 51 F.3d 901 (10th Cir. 1995).

[16] Def. Reply Memo. in Supp. of Mot. for Summary Judgment, at 2 (Docket No. 22) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[17] *Id.* at 3.

[18] *Id.*

Once the defense of qualified immunity has been raised, the plaintiff must show (1) that the "officer's conduct violated a constitutional right,"[19] and (2) "the right was clearly established," such that "it would be clear to a reasonable officer that his conduct was unlawful."[20] In determining whether a plaintiff has met its burden, the court "view[s] the evidence in the light most favorable to the plaintiff."[21]

To make this determination, the court will address the arguments as raised by the plaintiff. As noted above, there is no issue in this case that the officers were acting under color of state law and that the arrest, if illegal, violated a clearly established constitutional right. The question thus becomes did the officers have probable cause to arrest Harker. Harker asserts that the officers were trespassing on private property and had no reason to believe a crime was being committed. That argument must be rejected. The officers observed a truck running, with its lights on at approximately 4:00 a.m. The driver appeared to be slumped over the steering wheel. The officers argue that the truck appeared to have been involved in an accident. These facts were sufficient for the officers to conduct a further investigation. The law is well established that under such circumstances the officers are entitled to enter private property.[22] Indeed, public safety demands that the officers not ignore circumstances that would lead a reasonable person to believe further investigation is needed. The officers acted appropriately and within constitutional bounds when they approached the truck

---

[19] *Fogarty v. Gallegos,* 523 F.3d 1147, 1155 (10th Cir. 2008) (quotations and citations omitted).

[20] *Id.* (quotations and citations omitted).

[21] *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir. 1997) (citations omitted).

[22] *See, e.g.*, *United States v. Pinter*, 984 F.2d 376, 378–79 (10th Cir. 1993); *Nasca v. County of Suffolk*, No. 05-CV-1717, 2008 U.S. Dist. LEXIS 176, at *25–26 (E.D.N.Y. Jan. 2, 2008).

to further investigate the situation.

Nevertheless, once Harker responded to the officers' inquiry with a reasonable explanation of why he was on the property, in order to place Harker into custody, the offers were required to have probable cause that a crime had been committed. The circumstances at the scene did not support such probable cause. Harker's explanation was reasonable and consistent with the fact that the property was set out in the yard for loading, that there were trailers on site and the building had suffered a fire.

The officers argue that Harker was disoriented and slow to respond and they ordered him from the truck so they could conduct a field sobriety test. Under Utah law it may be reasonable for the officer to suspect the illegal use of alcohol under those circumstances.[23] Once the officers determined, however, that Harker had been sleeping and there was no other indication of alcohol, there was no basis for the officers to take further action. The officers argue that they ordered Harker out of the truck so they could conduct a field sobriety test, but the officers never conducted the test. They did not ask Harker to submit to a breathalyzer test, to an intoxilyzer test or to give a blood sample for testing.

The officers ordered Harker to the back of the truck where they conducted a Terry Frisk. There is, however, on this record no evidence to support that the officers had reasonable suspicion to continue detaining Harker once they learned why he was on the property. There is no evidence that he was using alcohol, other than his being groggy and confused, which was explained by his being suddenly awakened. There is no evidence that he was at that point in the detention threatening

---

[23] *See, e.g.*, *Lopez v. Schwendiman*, 720 P.2d 778 (Utah 1986); *Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982); *State v. Bugger*, 483 P.2d 442 (Utah 1971).

to the officers. Nor was there other evidence that a crime was being committed. Having determined that Harker was not in danger and that his conduct was lawful, the officers should have discontinued the inquiry and no longer detained him.

Even assuming that the officers had a reason to conduct a Terry Frisk, their subsequent conduct creates at least an issue of fact about whether they violated Harker's Fourth Amendment rights. Harker testified that he did not have his hands in his pocket. He also testified that the Butane mini-torch bore no resemblance to a knife. The Butane bottle was six inches high, three inches in diameter with a burner head tube that stuck out about an inch and one-half at a 90 degree angle from the top of the body. It was in the leg pocket of Harker's overalls, where one would reasonably expect such a tool to be carried. It is difficult to accept that a reasonable officer would have confused such a tool for a knife.

Moreover, the officers' explanation raises further questions about their credibility and the reasonableness of their belief. The defendants assert that "[d]ue to the quick removal of the torch and its shape Officer Peters believed the torch to be a smoking pipe (possible paraphernalia)." It is undisputed, however, that Harker did not remove the tool, but rather Officer Peters. How the quick removal of the mini-torch by Officer Peters would lend support to its being a smoking pipe is beyond explanation. The officers failed to assert, as is sometimes asserted in drug related cases, that the torch was used for melting an illegal controlled substance. There were no facts known to the officers at that point in the search to suggest any illegal drug activity and Harker's possession of the mini-torch was consistent with his explanation that he was removing wires from the equipment he was salvaging. In addition, no reasonably experienced officer could in good faith confuse a Butane mini-torch with a "smoking pipe."

The evidence is sufficient to create a issue of fact as to whether the officers proceeded lawfully and in good faith in placing Harker under arrest. The evidence is also sufficient to create an issue of fact as to whether the searches conducted "incident" to the arrest violated Harker's constitutional rights. As the defendants have argued, the legality of the subsequent search and seizure turns on whether there was probable cause for the arrest. On the evidence presented, there is at least an issue of fact that requires the court to reject at summary judgment the claimed defense of qualified immunity.

The officers further actions in placing Harker in handcuffs and seizing his vehicle lend support to his argument that the officers were not acting in good faith. Harker asserts that the officers were unnecessarily rough in placing the handcuffs on him. He further argues that there was no lawful purpose to seize his truck. He argues that it was sitting on private property. There was no public danger to traffic or otherwise to allow it to remain where it was. Harker asserts that he had permission to be on the property and there was no reason why the truck could not have been left there without risk to anyone or to the public. The evidence in this case is sufficient to create a factual question on these issues.

## IV.  HARKER'S CLAIMS AGAINST DAVIS COUNTY AND THE DAVIS COUNTY SHERIFF'S DEPARTMENT FAIL.

Harker alleges in his Complaint that Davis County and the Davis County Sheriff's Department failed to "properly train and educate officer employees regarding the U.S. Constitution, intimidating wrongful arrests and retaliatory prosecution, are deliberately indifferent to and acquiesce to such misconduct, tacitly approving such constitutional violations as a policy, practice and

custom."[24]  Harker alleges further that rather than training its police officers, the county "tolerates wrongful arrests to fund its operation and tacitly encourages the use of excessive force by not properly disciplining its officers."[25]  The County argues that it is immune under that UGIA[26] and, in its reply, that Harker cannot establish the required elements under § 1983, including that the County acted culpably.  For the reasons stated below, the court concludes that Harker cannot proceed against the County or the Davis County Sheriff's Department under § 1983.  Because the court resolves Harker's claims on this ground, it need not address the UGIA issue.

### A.  Claim Against Davis County

To maintain an action against a county under § 1983, a plaintiff must prove (1) "the deprivation of a constitutional right," and (2) that "the local government is responsible for that violation."[27]  As discussed above, Harker has presented sufficient evidence to create an issue of fact about whether he was deprived of his constitutional right under the Fourth Amendment.  He has therefore met the first element.

To prove the second element, a plaintiff must produce evidence sufficient to prove that the county itself acted with "deliberate action" that led to the plaintiff's alleged deprivation of federal

---

[24] Complaint, ¶ 40 (Docket No. 1).

[25] *Id.* ¶ 41.

[26] Utah Code Ann. § 63G-7-202 (2009).

[27] *Cahill v. Walker*, No. 3:03-cv-00257, 2005 U.S. Dist. LEXIS 39288, at *12–13 (E.D. Tenn. July 5, 2005).

rights.[28] Under this standard, the county cannot be liable "solely because it employs a tortfeasor."[29] The county cannot be held liable for "simple or even heightened negligence"[30] A plaintiff must show that the county acted with "deliberate indifference" to "known or obvious consequences,"[31] which is a "stringent standard of fault."[32] Thus, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[33]

To meet the required standard, the plaintiff must identify "a municipal 'policy' or 'custom' that caused the plaintiff's injury."[34] To show that such a policy existed, the plaintiff must point to decisions by officials whose acts can be found to be those of the municipality being sued.[35] Moreover, the policy must have resulted in practices that are so wide spread that they have the "force of law."[36] These requirements of proof are intended to require the court to distinguish between conduct that merely may be attributed to the county and conduct that "manifests culpability and

---

[28] *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (citation and italics omitted).

[29] *Id.* at 403.

[30] *Id.* at 407.

[31] *Id.* (quotations and citation omitted).

[32] *Id.* at 410.

[33] *Id.* at 404.

[34] *Id.* at 403 (citations omitted).

[35] *Id.* at 403–04.

[36] *Id.* at 404 (citation omitted).

causality"[37] because it was the "moving force behind the injury alleged."[38]

This means Harker must produce evidence to show that a Davis County policy or custom lead to, caused, or resulted in the deprivation about which he complains.[39] Harker asserts that the problematic policy or custom that led to the alleged deprivation is that Davis County failed to adequately train the officers responsible for the incident. To prove this allegation, Harker must show that the "need for better training [was] obvious," that it was a clear and persistent pattern, that the County was indifferent to the consequences, and that the lack of training caused the alleged deprivation.[40]

Harker's proffer falls significantly short of meeting these requirements. He offers no evidentiary support that the County, as distinct from its officers, engaged in any unconstitutional conduct, adopted a policy to engage in such conduct, had notice that its officers were persistently engaging in such conduct or otherwise was deficient in training or supervising its officers. Harker argues that the conduct of the officers alone is sufficient to allow an inference that the County had failed to properly train. The evidence in this case, however, is insufficient to meet the stringent requirements for proceeding against Davis County on a § 1983 claim and the claim must be dismissed.

---

[37] *Vulcan Pioneers v. City of Newark*, No. 02-5802, 2008 U.S. Dist. LEXIS 71256, at *10 (D.N.J. Sept. 9, 2008).

[38] *Brown*, 520 U.S. at 404 (quotations omitted).

[39] *See Vulcan Pioneers*, 2008 U.S. Dist. LEXIS 71256, at *13–14.

[40] *Id.* at *12–13 (citations omitted).

B.	**Claim Against the Davis County Sheriff's Department**

Harker's claim against the Davis County Sheriff's Department also fails. The law is now well established that such a claim against a sheriff's department cannot proceed "because governmental sub-units are not properly suable entities in § 1983 actions under *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985)."[41] A sheriff's department is "merely a subunit of city or county government."[42] Because claims against governmental subunits are paid from the city or county treasury, typically, the city, county or board of county commissioners is the proper party in interest under Rule 17(b) of the *Federal Rules of Civil Procedure* rather than the subunit.[43] Harker has presented no evidence to refute the Sheriff's Department budget is derived from the County. Consequently, the Sheriff's Department is not a proper entity for suit under § 1983. Even if Harker had presented such evidence, however, the "municipality" analysis and conclusion discussed above would apply equally to the Sheriff's Department. The court therefore dismisses Harker's claim against the Davis County Sheriff's Department.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.[44] The court grants summary judgment in favor of

---

[41] *Lujan v. County of Bernalillo*, No. 09-2119, 2009 U.S. App. LEXIS 25899, at *6 (10th Cir. Nov. 27, 2009) (quotations, citation, and alterations omitted).

[42] *Baker v. Colorado Springs Police Dep't*, No. 94-1133, 1994 U.S. App. LEXIS 33679, at *3 (10th Cir. Nov. 30, 1994).

[43] *See Reid v. Hamby*, No. 95-7142, 1997 U.S. App. LEXIS 23036, at *17–18 (10th Cir. Sept. 2, 1997).

[44] Docket No. 8.

defendants Davis County and the Davis County Sheriff's Department and hereby dismisses them from the case. The court denies summary judgment for defendants Steven Simpson and Brent Peters.

DATED this 26th day of March, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge